IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–00676–WYD–KMT

BARRY O'NEILL,

     Plaintiff,

v.

CALIFORNIA FARMS, INC.,
JAMES ROBERTS, and
DAN FANTZ,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on the following motions:

     "Plaintiff's Motion for Entry of Default and Default Judgment" (Doc. No. 8, filed May 16, 2012);

     "Plaintiff's Motion for Entry of Default and Default Judgment against Defendant Dan Fantz" (Doc. No. 28, filed Aug. 27, 2012);

     "Defendant Dan Fantz' Motion to Dismiss Pursuant to FRCP Rule 12(b)(2) [Lack of Personal Jurisdiction] and Rule 12(b)(3) [Improper Venue] or, in the Alternative, To Transfer for Improper Venue [28 USC § 1406(a)] or to Transfer for Convenience [28 USC § 1404(a)]" (Doc. No. 21; and

     "Plaintiff's Motion to Strike Defendant's Motion to Dismiss and Re-Urging Motion for Default Judgment" (Doc. No. 32, filed Sept. 13, 2012).

**FACTUAL BACKGROUND**

The following factual background is derived from Plaintiff's Complaint (Doc. No. 1,

filed Mar. 6, 2012) and the parties' briefing with respect to this Recommendation.  This case

concerns a loan and securities transaction entered into between Plaintiff and Defendant

California Farms, Inc.

In or around June 2009, Plaintiff was approached about an opportunity to invest in

California Farms, Inc. (hereinafter "the Company").  (Compl. ¶ 9.)  Defendant Roberts served as

the CEO, and Defendant Fantz served as the President, of the Company.  (*Id.* ¶ 10-11.)  Through

Defendant Roberts, Plaintiff was provided with information regarding the Company in the form

of a "Business Operations and Investor Overview" and a "Confidential Business Development

Update" (hereinafter, collectively, the "Offering Materials").  (Compl. ¶ 12; Doc. No. 8-1,

Declaration of Barry O'Neill ("O'Neill Decl.") ¶ 3, Ex. 1-2.)  The Offering Materials were

signed by Defendant Fantz on behalf of the Company.  (Compl. ¶ 13.)  The Offering Materials

including the following facts:

> a.  The Company had "in place and immediately available, all of the necessary equipment[,] . . . processing facilities, and human resources";
>
> b.  The Company could "triple to quadruple production without adding additional equipment or acquiring additional facilities";
>
> c.  A profit margin of "+/- $3.15 per pound" was achievable;
>
> d.  The Company would "average gross revenues of approximately $1,023,000.00/per month at a profit margin six to seven times higher than food service";

  e.  "[P]articipants in this initial round of equity financing will receive . . . handsome cash return";

  f.  The Company will obtain "a three- to five-fold increase of gross sales revenues";

  g.  The Company "presently has . . . the ability to deliver high-quality large volume organic produce direct to large retail customers"; and

  h.  The Company would receive "between $50 to $100 million dollars in authorized U.S. government economic stimulus funds."

(*Id.* ¶ 14.)  Plaintiff maintains that these statements were false at the time they were made.  (*Id.* ¶ 14-15.)

In reliance on these statements of fact, Plaintiff agreed to invest in the Company.  (*Id.* ¶ 16.)  Accordingly, on June 20, 2009, Plaintiff entered into a Promissory Note (hereinafter "the Note") with the Company.  (O'Neill Decl., Ex. 3.)  Plaintiff's investment was structured so that he made a $100,000 loan to the Company, secured by the Note in the amount of $200,000 principal debt.  (Compl. ¶ 17, O'Neill Decl., Ex. 3.)  The Note provided that Plaintiff would "receive payment equal to Twenty (20%) Percent of the annual EBITDA of California II, L.L.C. until the balance is repaid in full; along with an accounting statement showing the basis and a manner of calculation for each quarterly period.  (O'Neill Decl., Ex. 3; *see also* Compl. ¶ 19-20.)

The Note also acted as a subscription agreement for Plaintiff's receipt of 200,000 shares of stock of the Company.  (Compl. ¶ 18.)  Specifically, the Note provides:

  As and for further consideration for the sum loaned, Holder [Plaintiff] desires to subscribe for <u>TWO HUNDRED THOUSAND (200,000)</u> shares of common stock on the negotiated basis of one share for every dollar loaned ($1.00 per share) in

California Farms, Inc. ("Company").  Accordingly, Holder hereby offers to purchase and subscribes for TWO HUNDRED THOUSAND (200,000) Shares of Common Stock in the Company.

Plaintiff wired his investment of $100,000 to the Company on or about June 24, 2009.

(Compl. ¶ 21.)  Plaintiff has not received any of the payments pursuant to the Note.  (*Id.* ¶ 27.)

Plaintiff received only two quarterly accounting statements from the Company since the date of

the Note.  (*Id.* ¶ 28.)  Plaintiff maintains that those statements lacked sufficient information to

determine "the basis and manner of calculation for each quarterly period" or to otherwise

determine the financial status of the Company.  (*Id.* ¶ 29.)  Plaintiff requested additional

financial information from the Company, Roberts, and Fantz, but those requests were either

unanswered or unfulfilled.  (*Id.* ¶ 30.)

On January 24, 2012, Plaintiff sent correspondence to Defendants, along with California

Organics, LLC, an affiliate of the Company, tendering his shares in the Company.  (*Id.* ¶ 31.)

## PROCEDURAL HISTORY

Plaintiff's Complaint was filed on March 16, 2012.  Therein, Plaintiff asserts claims for

violations of the Securities Act of 1933 (hereinafter the "1933 Act"), the Colorado Securities Act

(hereinafter the "CSA"), and the California Corporate Securities Law of 1968 (hereinafter the

"CCSA"), as well as claims for fraudulent misrepresentation and breach of fiduciary duty.  (*See*

Compl.)

Defendant Roberts was served on March 21, 2012 (Doc. No. 6), and the Company was

served on March 25, 2012 (Doc. No. 7).  As such, Defendant Roberts and the Company had until

April 11 and 16, 2012, respectively, to file an Answer to Plaintiff's Complaint.

Neither Defendant Roberts or the Company answered or otherwise responded to Plaintiff's Complaint by that date.  Accordingly, Plaintiff filed his Motion for Entry of Default and Default Judgment as to these defendants on May 16, 2012.  The Clerk of Court entered default against Defendants Roberts and the Company on May 29, 2012.  (Doc. No. 14.)  As such, Plaintiff's Motion is before the court only to the extent that it seeks default judgment against these defendants.

Defendant Fantz was served on July 22, 2012.  As a consequence, his Answer was due no later than August 13, 2012.  (Doc. No. 23.)  Defendant Fantz did not file an Answer or otherwise respond by that date.  Accordingly, Plaintiff filed his Second Motion for Default and Default Judgment as to Defendant Fantz on August 27, 2012.  (Doc. No. 29.)  The Clerk entered default against Defendant Fantz on August 28, 2012.  (Doc. No. 30.)

The following day, August 29, 2012, Defendant, proceeding *pro se*, filed his Motion to Dismiss or Transfer.  Notably, Defendant Fantz' motion does not move to set aside the entry of default; nor does it assert any argument tantamount to seeking to set aside the entry of default.[1] Further, he has not moved for any such relief between the time his Motion to Dismiss or Transfer and the date of this Recommendation.

---

[1] The district court may find the fact that Defendant Fantz filed a *pro se* motion to dismiss a day after default was entered constitutes good cause to *sua sponte* set aside the entry of default pursuant to Fed. R. Civ. P. 55(c).  This judicial officer, however, lacks the authority to do so.

**ANALYSIS**

**I.    *MOTION TO STRIKE***

The court first addresses Plaintiff's Motion to Strike Defendant Fantz' Motion to

Dismiss.  Plaintiff seeks to strike Defendant Fantz' Motion to Dismiss in its entirety as untimely.

The court agrees with Plaintiff that Defendant Fantz has waived any objection to venue in

this court; however, it does not find that he has waived his arguments that this court lacks

personal jurisdiction or should transfer this case pursuant to 28 U.S.C. §1404(a).  The Tenth

Circuit has clearly held that "if a party is in default by failing to appear or to file a responsive

pleading, defects in venue are waived." *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1202

(10th Cir. 1986) (citing *Hoffman v. Blaski,* 363 U.S. 335, 343 (1960)). "Defects in personal

jurisdiction, however, are not waived by default when a party fails to appear or to respond." *Id.*

(citing *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 225 (10th Cir. 1979)).

> This distinction between defects in venue and personal jurisdiction is due to their
> respective effect on the court's power:  A judgment is void when a court enters it
> lacking subject matter jurisdiction or jurisdiction over the parties.  Defects in
> venue do not affect the court's power and a valid default judgment may be
> entered by a court notwithstanding the defect.

*Id.* at 1202-03.  Indeed, as discussed *infra,* the court must determine that it has personal

jurisdiction over Defendant Fantz prior to granting default judgment.

Further, "'[a] defendant who has waived his or her objection to improper venue has not

necessarily waived the right to seek a transfer of venue under Section 1404(a) of Title 28 of the

United States Code.'"  *Big O Tires, LLC v. Felix Bros., Inc.,* 724 F. Supp. 2d 1107, 1115 n.6 (D.

Colo. 2010) (quoting 14D CHARLES WRIGHT, ARTHUR MILLER & EDWARD COOPER, FEDERAL

6

PRACTICE AND PROCEDURE § 3829 (2009)); *see also Hoffman,* 363 U.S. at 335 ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff.")  Indeed, an action may be transferred under § 1404(a) at *any time* during the pendency of a case and *even after judgment has been entered.  Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir. 1991).  Therefore, although Defendant Fantz has waived his argument that venue in this District is improper, he has not waived his challenges to this court's personal jurisdiction or his request to transfer this matter to the Southern District of California pursuant to § 1404(a).  Accordingly, the court finds that Plaintiff's Motion to Strike is properly denied.[2]

## II.    *MOTION TO DISMISS OR TRANSFER*

### A.    *Personal Jurisdiction*

Defendant Fantz moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Section 22(a) of the 1933 Act provides in pertinent part:

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.  Any such suit or action may be brought in the district wherein the

---

[2] Although the court agrees with Plaintiff that Defendant Fantz has waived any objection to venue, the court elects to recommend that this argument be denied rather than stricken.

> defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, *and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.*

15 U.S.C. § 77v(a) (emphasis added).

The Tenth Circuit has held language nearly identical to the last clause of Section 22(a) authorizes nationwide service of process. *Peay v. Bellsouth Med. Assistance Plan,* 205 F.3d 1206, 1210 (10th Cir. 2000) (holding that there was no question that a nearly identical sentence found in an ERISA statute authorized nationwide service of process). "[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment [Due Process Clause] requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Id.* at 1212.

"To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate 'that his liberty interests actually have been infringed.'" *Id.* (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997)). "The burden is on the defendant to demonstrate that the assertion of jurisdiction in the chosen forum will make litigation so 'gravely difficult and inconvenient' that [he] unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985)). The Tenth Circuit has recognized that technnology and modern transportation have significant lightened the burden of defending a suit in a out-of-state forum *Id.* at 1213. Accordingly, "it is only in highly unusual cases that

inconvenience will rise to a level of constitutional concern." *Id.* at 1212 (quoting *Republic of Panama,* 119 F.3d at 947).

The Tenth Circuit has set forth several factors to consider when assessing whether a defendant has met it's burden "of establishing constitutionally significant inconvenience":  (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.  *Id.* at 1212 (citation omitted).

At the outset, because Defendants Roberts and the Company have not appeared or otherwise defended this action, they have not sustained their burden of showing that the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to his [Plaintiff]." *Id.* (the *defendant* bears the burden of demonstrating a lack of personal jurisdiction in cases involving a statute authorizing nationwide service of process).  Therefore, it is appropriate for the court to exercise personal jurisdiction over them.  Further, although a close call, the court finds for the following

reasons that Defendant Fantz has also failed to meet his burden of proving constitutionally significant inconvenience under *Peay*.

### 1.  *Factor One*

Defendant Fantz relies on the "minimum contacts" analysis outlined in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), to argue that this court lacks jurisdiction over him.  However, the *International Shoe* analysis is inapposite here; instead, as outlined above, because jurisdiction arises under a federal statute providing for nationwide service of process, the court must apply *Peay's* multi-factor analysis.  While specific contacts with the forum district are a relevant consideration, they are not *required* to establish personal jurisdiction. *Touchstone Group, LLC v. Rink,* --- F. Supp. 2d ----, 2012 WL 6652850, at *3 (D. Colo. Dec. 21, 2012) (citing *SEC v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996); *CGC Holdings Co., LLC v. Hutchens,* 824 F. Supp. 2d 1193, 1204 (D. Colo. 2011)).

Although Defendant Fantz's contacts with Colorado appear insufficient under *International Shoe,* he has allegedly made some non-trivial contact with the state of Colorado. Plaintiff alleges that Defendant Fantz participated in the preparation of, and signed, the Offering Materials—which contained a number of allegedly untrue statements of material fact—that were provided to Plaintiff in Colorado.  (Compl. ¶¶ 12–15); *see Touchstone Group,* 2012 WL 6652850, at *3 (finding non-trivial contacts with the forum state where the defendants participated in the preparation of fraudulent financial statements and false offerings that were then distributed in Colorado).  Although Defendant Fantz argues that Plaintiff, rather than Defendants, initially offered to make the loan and securities transaction at issue in Plaintiff's

Complaint, he does not dispute that the Company, through Defendant Roberts, engaged Plaintiff in Colorado for the purpose of obtaining such funding. *Touchstone Group,* 2012 WL 6652850, at *4 (distinguishing the circumstances in that case from those presented in *CGC Holding Co,* because the defendants "knew that their communications would reach Colorado.").  Because, by his own admission, the Company consisted of only the two founders, Defendants Fantz and Roberts, the court has no doubt that Defendant Fantz knew that his communications (i.e. the Offering Materials) would reach Colorado.  *Id.*

### 2. *Factor Two*

As to the second *Peay* factor, Defendant Fantz resides approximately 1200 miles from this District.  However, as noted by the Tenth Circuit in *Peay,* "[i]n this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened."  205 F.3d at 1213.  Thus, this distance alone does not demonstrate constitutionally significant inconvenience.  *See also Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 947 (11th Cir. 1997) (quoting CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.1 at 325 (1987)) ("'As a practical matter . . . state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum.  There is nothing inherently burdensome about crossing a state line.'").

Defendant Fantz also states that "he is 63 years of age, [] lost everything as a result of this business venture, [is] owed well over one hundred thousand dollars from California Organics, [and is] virtually bankrupt at this time."  (Declaration of Dan Fantz, ¶ 31 ["Fantz

Decl."].)[3]  As such, he maintains that he is "completely unable to afford legal representation in Colorado and [is] doing [his] best responding to this matter pro se for that reason."  (*Id.*); *see also CGC Holding Co.,* 824 F. Supp. 2d at 1207-08 (noting the significance of having counsel in forum state).  However, assuming Defendant Fantz is indeed "virtually bankrupt," it is just as unlikely that he would be able to afford counsel in his home state of California.  Thus, even though Defendant Fantz is proceeding *pro se,* "the inconvenience of litigating without counsel in this District is not significantly more than litigating without counsel in [California.]" *Klein v. Georges,* 2:12-cv-00076-DN, 2012 WL 5844962, at *3 (D. Utah Nov. 19, 2012).  Further, because Defendant Fantz and his co-defendants are in default, he already expended most, if not all, the effort required to defend this action in this forum.

Nevertheless, Defendant Fantz has made some showing of inconvenience under this factor.  Defendant Fantz states, and Plaintiff does not contest, that the Company only did business with California-based wholesalers and one retail grocery store based solely in Southern California.  (Fantz Decl. ¶ 25.)  Thus, outside of the financing transaction involving Plaintiff, the Company did not have any interstate character.

### 3.    *Factor Three*

Judicial economy favors this district.  Because Defendants Roberts and the Company have failed to plead or otherwise respond to Plaintiff's Complaint, this court has personal jurisdiction over them.  Thus, Plaintiff's claims against Defendant Roberts and the Company will

---

[3] Defendant Fantz' Declaration is attached to his Motion to Dismiss or Transfer at ECF pages 11-19.)

be resolved in this district.  Judicial economy is best achieved by resolving the claims against Defendant Fantz here as well.

### 4.     *Factor Four*

As a preface to the court's consideration of the fourth factor, the court notes that typically when evaluating personal jurisdiction, the court should look only to the facts as they existed at the time the complaint was filed.  *See, e.g., Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221, 236 (D.D.C. 2005); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990); *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica,* 614 F.2d 1247, 1254 (9th Cir. 1980).  Under this view, the fourth *Peay* factor favors Defendant Fantz.  Save for Plaintiff, all of parties either reside or are incorporated in California.  (Compl. ¶¶ 2-5.)  Further, Plaintiff has not contested that "virtually all parties, witnesses, and evidence [are] located in California," including the books and records of California Organics LLC."[4]  (Fantz Decl. ¶¶ 37, 39.)  Thus, at the time the Complaint was filed, the primary situs of discovery proceedings was likely to be California—the state of Defendant Fantz' residence and place of business.

However, at this juncture, default has been entered against all Defendants.  Therefore, no discovery relating to the merits of Plaintiff's claims will actually take place in this case.  *See Peay,* 205 F.3d at 1212 (the court should consider "the extent to which the discovery proceedings <u>will</u> take place outside the state of plaintiff's residence or place of business.") (emphasis added).  Thus, the court's practical consideration of this factor, in light of the

---

[4] According to Defendant Fantz, California Organics LLC is the sole asset of the Company.  (Mot. Dismiss/Transfer at 3.)

13

procedural juncture of these proceedings, does not demonstrate any actual inconvenience to Defendant Fantz.

### 5.   *Factor Five*

As to the fifth factor, the court again notes that the Company only did business with California-based wholesalers and one retail grocery store based solely in Southern California. (Fantz Decl. ¶ 25.)  Thus, the extent of Defendant's *primary* business activities had little impact beyond California's borders.  However, there is no dispute that, in order to finance its operations, the Company issued securities—the regulated activity in question—to Plaintiff, a Colorado resident.  The Company consisted of only two founders, Defendant Fantz and Roberts, and had "no other shareholders of any kind."  (Fantz Decl. ¶ 15.)  As such, the impact of the regulated activity at issue in this case was felt <u>only</u> in Colorado.

Altogether, the court finds that, although a somewhat close call, the *Peay* factors sufficiently favor exercising personal jurisdiction over Defendant Fantz' as to Plaintiff's claims arising under the Securities Act of 1933.  Indeed, only two of the factors moderately suggest that Defendant Fantz will be inconvenienced by defending this action in Colorado.  The court emphasizes "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'"  *Peay,* 205 F.3d (quoting *Republic of Panama,* 119 F.3d at 947).  The court cannot say that this is that highly unusual case.

As a final matter, the court notes that only four of Plaintiff's fourteen claims arise under the 1933 Act.  The remaining claims arise under Colorado and California state law.  The court is doubtful that it has an independent basis for exercising personal jurisdiction over these claims

under the *International Shoe* "minimum contacts" analysis.  However, because these claims clearly arise out of the same nucleus of operative fact, judicial economy favors exercising pendent personal jurisdiction them.  *United States v. Botefuhr,* 309 F.3d 1263, 1272 (10th Cir. 2002) (district court retains discretion as to whether to exercise pendent personal jurisdiction, although declining to exercise pendant jurisdiction is most common when all federal law claims have been dismissed); *Alcohol Monitoring Sys., Inc. v. Actsoft,* 682 F. Supp. 2d 1237, 1253 (D. Colo. 2010) (exercising pendent personal jurisdiction over additional claims because the interests of justice favor a single, consolidated action addressing all claims arising out of the same operative facts).

Accordingly, for the foregoing reasons, the court finds that Defendant Fantz' Motion to Dismiss or Transfer is properly denied to the extent that it seeks to dismiss this action against Defendant Fantz for lack of personal jurisdiction.

## B.      Transfer under 28 U.S.C. § 1404(a)

Defendant Fantz also moves to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a).  § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Where, as here, a party moves to transfer a case pursuant to § 1404(a), it bears the burden of establishing that transfer is appropriate. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991).

Defendant Fantz must make two showing to justify transfer.  First, he must establish that Plaintiff could have originally brought the action in the Southern District of California.  There

15

does not appear to be any question that this element is satisfied.  Section 22(a) of the 1933 Act

provides that a suit may be brought "in the district where district wherein the defendant is found

or is an inhabitant or transacts business."  15 U.S.C. § 77v(a).

Second, Defendant Fantz must demonstrate that considerations of convenience and the

interests of justice weigh in favor of transfer to that court.  *Chrysler Credit Corp.,* 982 F.2d at

1515.  Unless the balance of the inconvenience strongly favors the moving party, the plaintiff's

choice of forum should rarely be disturbed.  *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir. 1992).

The court must "weigh in the balance a number of case-specific factors."  *Stewart Org., Inc. v.*

*Ricoh Corp.,* 487 U.S. 22, 29 (1988).  These factors include (1) the plaintiff's choice of forum;

(2) the convenience and location of witnesses and other sources of proof; (3) the cost of making

the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5)

relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested

dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8)

the advantage of having a local court determine questions of local law; and,(9) all other

considerations of a practical nature that make a trial easy, expeditious, and economical.  *Chrysler*

*Credit Corp.*, 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F .2d 145, 147 (10th

Cir. 1967)).

The first factor weighs against transfer as "the plaintiff's choice of forum should be

rarely be disturbed."  *Scheidt,* 956 F.2d at 965.  Further, given that Defendants are presently in

default and the court is considering whether default judgment is properly entered against them, a

number of factors are irrelevant.  More specifically, because this case will not reach discovery,

16

let alone trial, the second, third, fifth, and ninth factors do not weigh heavily in the court's analysis.

As to the fourth factor, the court has already found that it has personal jurisdiction over Defendants, and there is no question that it has subject-matter jurisdiction over Plaintiff's claims. Thus, the court is convinced that it may issue an enforceable judgment. Further, the court has no evidence to suggest that the Southern District of California's docket is any more or less congested than that in this district.

Only the seventh and eighth factors give the court some brief pause. The promissory note signed by Plaintiff and Defendants includes a choice of law provision: "This Note shall be governed by and construed in accordance with the laws of the State of California." (O'Neill Decl., Ex. 3.) However, the court finds that this provision covers only contract claims. *See Kuehn v. Childrens Hosp.,* 119 F.3d 1296 ,1302 (7th Cir. 1997) (choice of law provision "will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended.") *See also, e.g., Jiffy Lube Int'l, Inc. v. Jiffy Lube, Int'l of Maryland,* 848 F. Supp. 569, 576 (E.D. Pa. 1994); *U.S. Fidelity and Guar Co. v. S.B. Phillips Co., Inc.,* 359 F. Supp. 2d 189 (D. Conn. 2005) (finding nearly identical provision to the one at issue in this case did not govern tort claims). Here Plaintiff's claims arises under California *and* Colorado securities statutes and in tort. The court finds that it is more than capable of deciding the relevant California state-law issues. *See Blake v. Pallan,* 554 F.2d 947 (9th Cir. 1977) (California securities laws are modeled after the Federal securities laws). Ultimately, this factor does not favor transfer.

Accordingly, having balanced the appropriate factors, the court finds that Defendant Fantz has failed to demonstrate that considerations of convenience and the interests of justice weigh in favor of transfer to the Southern District of California.  Therefore, the court finds that Defendant Fantz' Motion to Dismiss or Transfer is properly denied to the extent that it seeks to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Southern District of California.

## II.     MOTIONS FOR DEFAULT JUDGMENT

Having resolved the threshold issues of personal jurisdiction and transfer, the court turns to the substance of Plaintiff's Motions for Default Judgment.

Pursuant to Fed. R. Civ. P. 55, default may enter against a party who fails to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendants failed to timely respond to Plaintiff's Complaint.  Before proceeding with a default judgment, however, the court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment and whether the damages can be ascertained.

### A.     Jurisdiction

In determining whether a default judgment is warranted, the court must first consider whether it has jurisdiction over the subject matter and the defendant.  *Dennis Garberg & Associates, Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).  The Court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action."  *United States v. 51 Pieces of Real Prop.,* 17 F.3d 1306, 1309 (10th Cir. 1994).

### 1.      *Subject Matter Jurisdiction*

Plaintiff asserts that the court has subject matter jurisdiction because he asserts claims pursuant to the Federal Securities Act of 1933.  (Compl. ¶ 6; *see also id.* ¶¶ 32-64.)  Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Because Plaintiff's first, second, third, and fourth claims for relief arise under federal law, the court has subject matter jurisdiction over those claims.  In addition, the court finds that it has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

The court finds that it also has jurisdiction in this case pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the matter in controversy exceeds $75,000, exclusive of interest and costs.  The Company is a California corporation with its principal place of business in Simi Valley, California (Compl. ¶ 3), Defendant Roberts is a resident of Simi Valley, California (*id.* ¶ 4), and Defendant Fantz is a resident of Hollister, California (*id.* ¶ 5).  As will be discussed further below, Plaintiff's damages exceed $75, 000.

### 2.      *Personal Jurisdiction*

In addition to subject matter jurisdiction, entry of a default judgment in a civil case requires personal jurisdiction over the defendant.  *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).  The court must first address the adequacy of service in deciding whether it has personal jurisdiction over Defendants.  *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010).

Plaintiff's Complaint identifies the Company as a California corporation.  (Compl. ¶ 2.)

Therefore, the court analyzes the adequacy of service on the Company under Fed. R. Civ. P.

4(h).  Rule 4(h) provides that service on a corporation, partnership, or association is adequate if

effected "by delivering a copy of the summons and of the complaint to an officer, a managing or

general agent, or any other agent authorized by appointment or by law to receive service of

process . . . ."  Fed. R. Civ. P. 4(h)(1)(B).

On May 8, 2012, Plaintiff filed a return of service demonstrating that a private process

server personally delivered the complaint and summons to Defendant Fantz, an authorized agent

of the Company, on March 25, 2012.  (Doc. No. 7.)  The Court therefore finds that the Company

was properly served in compliance with Fed. R. Civ. P. 4(h).

Defendants Roberts and Fantz are both individuals; as such, the court analyzes the

adequacy of service as to them under Fed. R. Civ. P. 4(e).  Rule 4(e) provides service on an

individual within a judicial district of the United States is effected by, *inter alia,* "delivering a

copy of the summons and of the complaint to the individual personally" or "leaving a copy of

each at the individual's dwelling or usual place of abode with someone of suitable age and

discretion who resides there."

Plaintiff filed a return of service on April 24, 2012 indicating that a private process server

personally delivered the summons and complaint in this case to Defendant Robert's wife, Dena

Roberts, at their home on March 21, 2012.  (Doc. No. 6.)  On July 30, 2012, Plaintiff filed a

return of service indicating that a private process server personally delivered the summons[5] to

Defendant Fantz at his home on July 22, 2012.  (Doc. No. 23.)  Therefore, the court finds that

Defendants Roberts and Fantz were properly served in accordance with Fed. R. Civ. P. 4(e).

In addition, the court finds that it has personal jurisdiction over Defendants for the

reasons stated *infra* with respect to Defendant Fantz' Motion to Dismiss or Transfer.

### B.    *Factual Basis for Default Judgment*

Even after a proper entry of default, the Court must decide "'whether the unchallenged

facts constitute a legitimate cause of action'" such that a judgment should be entered.  *Bixler,*

596 F.3d at 762 (quoting 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE,

FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed. 1998)).  "'There must be a sufficient

basis in the pleadings for the judgment entered.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "[A] party is not entitled to a default judgment

as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of

the court."  *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL

793606, at *2 (D. Colo. Mar. 22, 2008) (unpublished decision) (quoting *Cablevision of Southern*

*Conn., Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

Upon review of a motion for default judgment, assuming default was properly entered,

the moving party enjoys the benefit of deferential pleading interpretation.  *See Olcott v.*

---

[5] The return of service indicates that only the summons, and not the complaint, was served on Defendant Fantz.  However, to the extent this creates a question as to the sufficiency of service, Defendant Fantz waived that issue by failing to include it in his Motion to Dismiss or Transfer.  Fed. R. Civ. P. 12(h).

*Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).  The court deems the well-plead

facts of the complaint to be true.  *Vibe Tech., LLC v. Suddath*, No. 06-cv-00812, 2009 WL

2055186, at *1 (D. Colo. 2009) (unpublished) (citing *Dundee Cement Co. v. Howard Pipe &*

*Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Undisputed facts set forth by the

moving party in affidavits and exhibits are also accepted as true.  *Id.*

> ***1.      Federal and State Law Securities Claims for Failure to Register***
> ***Securities***

Plaintiff's first through twelfth claims for relief assert violations of the 1933 Act, the

CSA and the CCSA.  The court prefaces that both the CSA and the CCSA are modeled after the

1933 Act.  *Coffey v. Dean Witter Reynolds Inc.,* 961 F.2d 922, 926 (10th Cir. 1992); *Moreland v.*

*Dep't of Corps.,* 194 Cal. App. 3d 506, 512 (1987).  Indeed, this will become apparent *infra*.

> ***a.      First Claim – Section 12(a)(1) of the 1933 Act***

Plaintiff's first claim for relief asserts that the Company is liable to him under Section

12(a)(1) of the 1933 Act,[6] 15 U.S.C. § 77l(a)(1), because it failed to register the securities

transaction consummated by way of the Note in violation of Section 5(a) and 5(c), 15 U.S.C. §

77e(a) and 77e(c).[7]

---

[6] Section 12(a)(1) provides a private right of action to enforce the registration
requirements of Section 5, by providing that the person who "offers or sells a security in
violation of section 77e . . . shall be liable . . . to the person purchasing such security from him . .
. [for] the consideration paid for such security . . . ."  15 U.S.C. § 77l(a).

[7] The court notes its concerns about the timing of this claim, as well as the related state
securities law claims.  15 U.S.C. § 77m provides that no action shall be maintained under section
77l(a)(1) "unless brought within one year after the violation upon which it is based."  The CSA
and CCSA provide a slightly longer two-year statute of limitations for the Colorado and

To establish a Section 5 violation, and thus liability under Section 12(a)(1), Plaintiff must show that securities were offered or sold in interstate commerce and that no registration statement was filed for any such offering or sale. *SEC v. Prater,* 289 F. Supp. 2d 39, 51 (D. Conn. 2003) (citing *SEC v. Cavanaugh,* 155 F.3d 129, 133 (2d Cir. 1998)); *see also SEC v. Mantria Corp.,* 09-cv-02676-CMA-MJW, 2011 WL 3439348, at *7 (D. Colo. Aug. 5, 2011). Pursuant to 15 U.S.C.  Scienter is not a required element of a violation of the Securities Act's registration requirements. *Aaron v. SEC,* 446 U.S. 680, 714 n.5 (1980)).  Once Plaintiff establishes this *prima facie* violation of Section 5, it is the Company's burden to prove that an exemption to registration applies. *See SEC v. Ralston Purina Co.,* 346 U.S. 119, 126 (1953).

Here, the unchallenged facts demonstrate that the Company offered and sold securities to Plaintiff through interstate commerce by way of the subscription agreement for 200,000 shares of the Company's common stock.  (Compl. ¶¶ 18, 21-22, 33; O'Neill Decl., Ex. 3.)  No

---

California analogues of this claim.  Colo. Rev. Stat. § 11-51-604(8); Cal. Corp. Code § 25507(a).  Plaintiff's Complaint was filed almost three years after the parties signed the Note.

Nevertheless, these concerns are not for the court's consideration.  Because a statute of limitations is an affirmative defense, and thus can be waived, the court cannot properly raise the issue on its own motion.  *See Arizona v. California*, 530 U.S. 392, 412–13 (2000) (stating courts should raise statute of limitations defense on own motion only in narrow circumstances); *Erline Co. S.A. v. Johnson*, 440 F.3d 648, 654–56 (4th Cir. 2006) (finding district court erred by considering statute of limitations defense on its own motion after plaintiff moved for default judgment); *Haskell v. Wash. Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) ( "Since it is a waivable defense, it ordinarily is error for a district court to raise the [statute of limitations] *sua sponte*."); *Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1987) (concluding *sua sponte* consideration of statute of limitations was an "error of law"); *Wagner v. Fawcett Publ'ns*, 307 F.2d 409, 412 (7th Cir.1962) (observing that statute of limitations is "a personal privilege of a defendant," and that district court erred in raising it *sua sponte*).

registration statement was filed or in effect with the SEC in connection with this subscription agreement.  (Compl. ¶¶ 23, 34; O'Neill Decl., Ex. 3 ¶ 7.)  Defendants, by not appearing, have failed to  demonstrate that the subscription agreement falls under any exemption.  Therefore, the court finds that the Company offered and sold unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act, and is liable to Plaintiff for that violation pursuant to Section 12(a) (1).

   b.     *Fifth Claim – Section 11-51-604(1) and11-51-301 of the CSA*

   Plaintiff's fifth claim for relief alleges that the Company violated the CSA by failing to register the subscription agreement.  The sale of unregistered securities in Colorado violates the CSA unless the securities are exempt from registration.[8]  Colo Rev. Stat. § 11-51-301*; Black Diamond Fund, LLLP v. Joseph,* 211 P.3d 727, 731 (Colo. App. 2009).  The CSA prohibition on the sale of unregistered securities applies to persons who sell or offer to sell securities in Colorado.  Colo. Rev. Stat. § 11-51-102.  The CSA provides a private cause of action for violations of Section 11-51-301.  Colo. Rev. Stat. § 11-51-604(1).  Much like under the 1933 Act, the burden is on the defendant to show that a exemption from registration applies.  Colo. Rev. Stat. § 11-51-605; *Western-Realco Ltd. P'ship 1983-A v. Harrison*, 791 P.2d 1139, 1143 (Colo. App. 1989) (party asserting affirmative defense of exemption from registration has burden of proving entitlement to exemption).

---

   [8] Section 11-51-301 provides that "It is unlawful for any person to offer to sell or sell any security in this state unless it is registered under this article or unless the security or transaction is exempted under sections 11-51-307, 11-51-308, or 11-51-309."  Colo Rev. Stat. § 11-51-301.

The Company offered and sold securities to Plaintiff in Colorado.  (*See* Compl. ¶ 66.) The Company failed to file a registration statement for the securities sold to Plaintiff with the Colorado Securities Commissioner.  (*See* Compl. ¶ 67.)  Defendants, by not appearing, have not demonstrated that the subscription agreement was exempt from registration.  *See* Colo. Rev. Stat. §§ 11-51-307, 11-51-308, & 11-51-309.  Therefore, the court finds that the Company offered and sold unregistered securities in violation of the CSA, and is liable to Plaintiff for that violation. Colo Rev. Stat. §§ 11-51-301, 11-51-604(1).

### c.        Ninth Claim – Sections 25503 and 25110 of the CCSA

Plaintiff's ninth claim for relief asserts that the Company violated the CCSA by failing to register the subscription agreement.  Under the CCSA, it is unlawful for any party to sell securities unless the sale has been properly qualified by the state or is subject to one of the enumerated exceptions.  *See* Cal. Corp. Code § 25510.  The CCSA provides a private cause of action for violations of Section 25110.  Cal Corp. Code § 25503.  Much like under the 1933 Act and the CSA, the defendant has the burden of proving that the securities were exempt from registration.  Cal Corp. Code § 25163; *Koehler v. Pulvers,* 614 F. Supp. 829, 849 (S.D. Cal. 1985).

The Company offered and sold securities from the State of California.  (*See* Compl. ¶ 66.)  The Company failed to qualify these securities with the California Commissioner of Corporations.  (*See id.* ¶ 100.)  Defendants, by not appearing, have failed to demonstrate that the subscription agreement was exempt from qualification.  *See* Cal. Corp. Code § 25102.

25

Therefore, the court finds that the Company offered and sold unqualified securities in violation of the CCSA, and is liable to Plaintiff for that violation.   Cal. Corp. Code §§ 25110 25503.

**2.      *Federal and State Law Securities Claims for Untrue Statements of Material Fact***

**a.      *Second Claim – Section 12(a)(2) of the 1933 Act***

Plaintiff's second claim for relief asserts that the Company made untrue statements of fact in the Offering Materials provided to Plaintiff, in violation of Section 12(a)(2) of the 1933 Act.

Section 12(a)(2) provides that any person who:

> offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact . . . and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77l(a)(2).  "The purchaser need not prove scienter, fraud, or negligence on the part of the seller, nor need he establish that he relied upon the misrepresentation or omission or that his or her loss was a direct or proximate result of the misrepresentation or omission."  *Schaffer v. Evolving Sys., Inc.,* 29 F. Supp. 2d 1213, 1220 (D. Colo. 1998) (citing *MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/Am. Express Inc.,* 886 F.2d 1249, 1256-57 (10th Cir. 1989).  The burden is on the defendant to show that he did not know, or in the exercise of reasonable care could not have known, that the statement of material fact was untrue.  § 77l(a)(2).

In the course of offering and selling securities to Plaintiff, the Company provided Plaintiff with the Offering Materials.  (Compl. ¶ 41-42.)  The court finds that the Offering

Materials constitute a prospectus as they are targeted primarily at potential investors.  (O'Neill

Decl., Ex. 1-2.)  *See Gustafson*, 513 U.S. 561, 574 (1995) (A "prospectus" is a "document

soliciting the public to acquire securities.")  The unchallenged facts establish that the Offering

Materials included a number of statements of material facts that were false at the time they were

made.  (Compl. ¶¶ 14-15, 43.)  Accordingly, the court finds that Plaintiff has established that the

Company violated Section 12(a)(2).

> **b.     Sixth Claim – Sections 11-51-501(b)(3) and 11-51-604(4) of the
> CSA**

Plaintiff's sixth claim for relief asserts that the Company violated the CSA because the

Offering Materials presented to Plaintiff included numerous untrue statements of material fact.

The CSA provides that

> [i]t is unlawful for any person, in connection with the offer, sale, or purchase of
> any security . . . (b) To make any untrue statement of a material fact or to omit to
> state a material fact necessary in order to make the statements made, in the light
> of the circumstances under which they are made, not misleading . . . .

Colo. Rev. Stat. 11-51-501(1)(b).  The CSA prohibition on the untrue statements in connection

with the sale of securities applies to persons who sell or offer to sell securities in Colorado.

Colo. Rev. Stat. § 11-51-102.  The CSA also provides a private cause of action for violations of

11-51-501(1)(b).  Colo. Rev. Stat. § 11-51-604(4).  The burden is on the defendant to show that

he did not know, or in the exercise of reasonable care could not have know, that the statement of

material fact was untrue.  *Id.*

For the reasons discussed above with respect to Plaintiff's second claim for relief for

violations of Section 12(a)(2) of the 1933 Act, the court finds that the Company made untrue

statements of material fact in the Offering Materials in violation of the CSA, and is liable to Plaintiff for that violation.  Colo. Rev. Stat. §§ 11-51-501(1)(b), 11-51-604(4).

### c.        *Tenth Claim – Section 25401 of the CCSA*

Plaintiff's tenth claim for relief asserts that the Company violated the CCSA by including untrue statement of material facts in the Offering Materials.  Much like the CSA and the 1933 Act, the CCSA makes it unlawful for any person to sell a security by means of untrue statements of material fact.  Cal. Corp. Code § 25401.  Section 25501 of the CCSA creates a civil cause of action for violations of Section 25401.  The burden is on the defendant to prove either that "the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or he had exercised reasonable care would not have known) of the untruth or omission."  Cal Corp. Code § 25501.

For the reasons discussed above with respect to Plaintiff's second claim for relief for violations of Section 12(a)(2) of the 1933 Act, the court finds that the Company made untrue statements of material fact in the Offering Materials in violation of the CCSA, and is liable to Plaintiff for that violation.  Cal Corp. Code §§ 25401, 25501.

### 3.        *Federal and State Law Claims for Control Person Liability*

### a.        *Third and Fourth Claims – Section 15 of the 1933 Act*

Plaintiff's third claim and fourth claims for relief assert that, as "control persons" of the Company, Defendants Roberts and Fantz are liable for the Company's Section 12 violations discussed above.

> "Controlling person" liability, under Section 15 of the 1933 Act, [15 U.S.C. § 77o], is contingent upon proof of primary liability under §§ 11 or 12, and provides that any person who "controls" another liable under either section shall be held "jointly and severally" liable with that person "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

*In re Oppenheimer Rochester Funds Group Securities Litigation,* 838 F. Supp. 2d 1148, 1157 (D. Colo. 2012) (quoting § 77o).  A defendant has "control" if he had "'possession direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1305 (10th Cir. 1998).

As discussed above, Plaintiff has established primary violations of Section 12 of the 1933 Act by the Company for failure to register the subscription agreement and for including untrue statements of fact in the Offering Materials.  The unchallenged facts also demonstrate that Defendants Roberts and Fantz had "control" over the Company.  Defendants Roberts and Fantz served as CEO and President of the Company.  (Compl. ¶ 10-11.)  Further, Defendant Fantz signed the Offering Materials and Defendant Roberts signed the Note on behalf of the Company.  (*Id.* ¶ 13; O'Neill Decl., Ex. 1-3.)  Defendants, by not appearing, have not demonstrated that they had no knowledge  of or reasonable ground to believe in the existence of the facts underlying the Company's liability.  Accordingly, the court finds that the unchallenged facts establish that Defendants Roberts and Fantz are liable as "controlling persons" for the Company's primary violation of Section 12 of the 1933 Act.

   **b.**   ***Seventh and Eighth Claims – Control Person Liability under the CSA***

Plaintiff's seventh and eighth claims for relief assert that Defendants Roberts and Fantz are liable as control persons under the CSA for California Farm's failure to register the securities and inclusion of untrue statements in the Offering Materials. Colo Rev. Stat. § 11-51-604(5)(a)-(b) provides:

> 5(a) Every person who, directly or indirectly, controls a person liable under subsection (1), (2), (2.5), (2.6), or (3) of this section is liable jointly and severally with and to the same extent as such controlled person, unless the controlling person sustains the burden of proof that such person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

> 5(b) Every person who, directly or indirectly, controls a person liable under subsection (3) or (4) of this section is liable jointly and severally with and to the same extent as such controlled person, unless such controlling person sustains the burden of proof that such person acted in good faith and did not, directly or indirectly, induce the act or acts constituting the violation or cause of action.

As discussed above, the Company is liable under Sections 11-51-604(1) and 11-51-604(4) for failure to register the securities sold to Plaintiff by way of the Note and for the untrue statements of material fact included in the Offering Materials.  For substantially the same reasons that Defendants Roberts and Fantz are "controlling persons" under the 1933 Act, the court finds that Defendants Roberts and Fantz are controlling persons under the CSA. Accordingly, the court finds that Defendants Roberts and Fantz are liable for the Company's primary violations of the CSA.

   **c.**   ***Eleventh and Twelfth Claims – Control Person Liability under the CCSA***

30

Plaintiff's eleventh and twelfth claims for relief assert that Defendants Roberts and Fantz are liable as control persons under the CCSA for the Company's failure to register the securities and inclusion of untrue statements in the Offering Materials.   Section 25504 of the CCSA provides:

> Every person who directly or indirectly controls a person liable under Section 25501 or 25503 . . . are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Cal. Corp. Code. § 25504.

As discussed above, the Company is liable under Sections 25501 and 25503 for failure to register the securities sold to Plaintiff by way of the Note and for the untrue statements of material fact included in the Offering Materials.  For substantially the same reasons that Defendants Roberts and Fantz are "controlling persons" under the 1933 Act, the court finds that Defendants Roberts and Fantz are controlling persons under the CCSA.  Accordingly, the court finds that Defendants Roberts and Fantz are liable for the Company's primary violations of the CCSA.

### 4.      *Thirteenth Claim – Fraudulent Misrepresentation*

Plaintiff's thirteenth claim for relief asserts a claim for fraudulent misrepresentation against Defendants based on the false statements contained in the offering materials.

This claims fails.  Colorado law requires knowledge of falsity as an element of a fraudulent misrepresentation claim.  *Williams v. Boyle,* 72 P.3d 392, 399 (Colo. App. 2003).[9] Plaintiff's Complaint is devoid of any allegations that Defendants knew or recklessly disregarded the truth of the statements made in the Offering Materials at the time they were made. Accordingly, Defendants are not liable to Plaintiff for fraudulent misrepresentation.

### 5.        *Fourteenth Claim – Breach of Fiduciary Duty*

Plaintiff's fourteenth claim for relief is a claim for breach of fiduciary duty.  The elements of breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) defendant's breach of the fiduciary duty; and (3) damages as a result of the breach.

The court finds that this claim also fails.  Plaintiff first alleges that Defendants owed him a fiduciary duty due to their superior relation to Plaintiff, and breached that duty by making the false statements contained in the Offering Materials.  (Compl. ¶¶ 138-39.)  A fiduciary relationship may exist as a matter of law or may arise where one party occupies a superior position relative to another.  *Brodeur v. Am. Home Assurance Co.,* 169 P.2d 139, 151 (Colo. 2007) (citations omitted).  "However, an unequal relationship does not automatically create a fiduciary duty."  *Id.*  Rather, "[i]n order to be liable, the superior party must assume a duty to act in the dependent party's best interest."  *Id.*

---

[9] The court applies Colorado law to this claim as Plaintiff has not raised or addressed any choice of law issues.  *Government Emps. Ins. Co. v. Moore*, 427 F. App'x 643, 645 (10th Cir. 2011); *Flying J. Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 832 (10th Cir. 2005) (court need not address choice of law issues *sua sponte*).  Nevertheless, the court notes that California law also requires knowledge of falsity, or scienter.  *Vogelsang v. Wolpert,* 227 Cal. App. 2d 102, 109 (1964).

Here, Defendants likely had superior access to the information included in the Offering Materials.  However, there are no allegations to support a conclusion that Defendants assumed a duty to act in Plaintiff's best interest.  *See Trussell v. United Underwriters, Ltd.,* 228 F. Supp. 757, 763 (D. Colo. 1964) (the mere fact that parties are purchasers and sellers of stock does not create a fiduciary duty).

Plaintiff also maintains that Defendants owed him a fiduciary duty as an "investor with Defendants."  (Compl. ¶ 139.)  It is true that corporate officers and directors owe a fiduciary duty to shareholders.  *Van Schaack Holdings, Ltd. v. Van Schaack,* 867 P.2d 892, 898 (Colo. 1994).  However, at the time of Defendants' misrepresentations, Plaintiff was not an investor or a shareholder; rather he was only a *potential* investor interested in acquiring stock in the Company.  Under these circumstances, no fiduciary duty exists.  *Trussell,* 228 F. Supp. at 763.  Accordingly, the court finds that Defendants are not liable to Plaintiff for breach of fiduciary duty.

### 6.   *Damages*

In addition to finding that Plaintiff has a legal basis for relief, a default judgment cannot be entered until the amount of damages has been ascertained.  *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  A default judgment for money damages must be supported by proof.  *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).  This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence.  *See id.*

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Further, "[a]though upon default the

factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily are not." *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

### a.      Statutory Damages

As to all of the violations of the 1933 Act, the CSA, and the CCSA, Plaintiff seeks damages in the amount equal to the principal owed under the Note, as well as incidental and consequential damages, together with interest.  (Compl. ¶¶ 39, 45, 55, 63, 71, 78, 88, 96, 104, 111, 121, 129.)

The 1933 Act provides that a person who fails to register securities or includes an untrue statement of material fact in a prospectus is liable for "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such securities, or for damages if he no longer owns the security."  15 U.S.C. § 77l(a).  In addition, a controlling person "shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 77o(a).  Save for the addition of attorney's fees, which are discussed below, damages under the CSA and the CCSA are, for all practical purposes, identical to the damages provided for by the 1933 Act.  *See* Colo Rev. Stat. § 11-51-604(1), (4), (5)(a)-(b); Cal. Corp. Code §§ 25501, 25503, 25504.

The court finds that Plaintiff is entitled to recovery only the consideration paid for the securities, plus interest.  Plaintiff did not "no longer own" the Company's common stock; rather, he admits that he tendered his shares to the Company on January 24, 2012.  (Compl. ¶ 31.)  As such, pursuant to the plain language of the 1933 Act and the CSA he is only entitled to recover

34

the consideration paid for the Company's common stock, plus interest.  15 U.S.C. § 77l(a); Colo. Rev. Stat. § 11-51-604(1), (4).

Further, although the CCSA does not require that Plaintiff no longer own the securities to recover damages, it nevertheless provides a specific calculation for the allowable damages: "[T]he difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received on the security."  Cal Corp. Code § 25501. Plaintiff has not submitted any evidence as to the value of the common stock at the time he tendered it or the amount of any income he received on the stock.  As such, Plaintiff's damages under the CCSA are identical to the damages recoverable under the 1933 Act and the CSA —the consideration paid for the stock (i.e. $100,000), plus interest.

### b.       Attorney's Fees

Plaintiff also seeks an award of attorney's fees.  (*See, e.g.,* Compl. ¶ 71, 104.)  Although the 1933 Act does not authorize such an award, the CSA provides for an award of attorney's fees as part of the plaintiff's damages.  Colo Rev. Stat. § 11-51-604(1), (4).

To determine a reasonable fee award, the court must conduct a lodestar calculation as set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2002).  A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate.  *Hensley*, 641 U.S. at 433.

To determine a reasonable hourly billing rate, the court must look at what the "evidence shows the market commands for . . . analogous litigation." *Case v. Unified Sch. Dist.,* 157 F.3d 1243, 1255 (10th Cir. 1998).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.  *Ward v. Siebel,* No. 06-cv-00036-WYD-MJW, 2012 WL 2196054, at *3 (D. Colo. June 15, 2012).

Although Plaintiff's counsel describes the skills and experience of the attorneys and paralegal who provided services on this case, there is no evidence, other than Plaintiff's counsel's conclusory opinion, as to the prevailing market rate for similar services in the Denver market.  (Doc. No. 29, Declaration of Amber Jene Münck, ¶ 11.)  As such, the court finds it appropriate to deny Plaintiff's request for attorney's fees without prejudice.  This appears especially wise here as, based on this court's experience, the $595 hourly rate charged by one of Plaintiff's attorneys, Mr. Musyl, is exceptionally high for the Denver area.  *See also Universal Drilling Co., Inc. v. Newpark,* 08-cv-02686-MSK-CBS, 2011 WL 715961, at *2 (D. Colo. Feb. 22, 2011) (discussing 2008 Colorado Bar Association survey that concluded that the median rate for partners at large law firms is $400 per hour, with a 95th percentile rate of $595).  In addition, the remaining billing rates are all well above the median billing rate for larger firms.  *See id.*

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Plaintiff's Motion to Strike Defendant's Motion to Dismiss and Re-Urging Motion for Default Judgment" (Doc. No. 32), "Defendant Dan Fantz' Motion to Dismiss Pursuant to FRCP Rule 12(b)(2) [Lack of Personal Jurisdiction] and Rule 12(b)(3)

[Improper Venue] or, in the Alternative, To Transfer for Improper Venue [28 USC § 1406(a)] or to Transfer for Convenience [28 USC § 1404(a)]" (Doc. No. 21) be DENIED.  The court further

RECOMMENDS that

"Plaintiff's Motion for Entry of Default and Default Judgment" (Doc. No. 8) and

"Plaintiff's Motion for Entry of Default and Default Judgment against Defendant Dan Fantz" (Doc. No. 28) be GRANTED in part and DENIED in part as follows:

1.      Plaintiff's Motions for Default Judgment should be GRANTED as to Plaintiff's first through twelfth claims for relief, and judgment should be entered against Defendants for the sum of $100,000, plus interest, jointly and severally;

2.      Plaintiff's Motions for Default Judgment should be DENIED as to Plaintiff's thirteenth and fourteenth claims, and these claims should be dismissed with prejudice;

3.      Plaintiff's Motions for Default Judgment should be DENIED without prejudice to the extent that they seek attorneys fees, with leave to file an appropriate motion and accounting under Fed. R. Civ. P. 54(d)(2).

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge